RANDALL v. KREIGER.

A. and wife, residents of the State of New York, executed a power of attorney to B. to sell lands in Minnesota Territory of which A., the husband, was seized. The power was executed and acknowledged by both parties, the wife undergoing such separate examination as by the laws of New York makes valid the execution of deeds by a *feme covert.* At the time when this power of attorney was given there was no law of the Territory authorizing such an instrument to be executed by the wife or the attorney

---

to convey under it. B., professing to act for the two parties, sold and conveyed a piece of the land, then worth $3000, with general warranty, to C., for that sum, and A. received the money. The legislature of Minnesota subsequently passed an act by which it was enacted that "all deeds of conveyance of any lands in the Territory, whether *heretofore* or hereafter made, under a joint power of attorney from the husband and wife, shall be as binding and have the same effect as if made by the original parties." The husband and wife afterwards revoked the power. The husband died leaving a large estate composed entirely of personalty, the whole of which he gave to his wife. The wife now brought suit for dower in the land sold by B. as attorney for her husband and herself. *Held*, that the power of attorney was validated by the curative act, which the court, adverting to the fact that the husband had received the purchase-money for the tract, and that it had become part of his estate, and that the whole of it on his death passed to the wife, declares had a strong natural equity at its root, and accomplished that which a court of equity would have failed to decree against the wife, only because it would be prevented by the unbending law as to *feme coverts* in such cases.

APPEAL from the Circuit Court for the District of Minnesota.

Mrs. Sarah Randall, whose husband, John Randall, had been seized in fee during their marriage of a piece of land in Minnesota, brought suit, her husband being now dead, to have dower in the land.

The case was thus:

In May, 1849, the said John Randall, being seized as abovesaid in fee of the land, he and his wife, then, as always before and afterwards, resident in the State of New York, executed in the form proper to pass a *feme covert's* interest in lands in that State, a power of attorney to a person in Minnesota, by which the latter was authorized to sell and convey the land in question, as also other tracts. The power was duly recorded in Minnesota. At the time when this power was given it seemed that there was no mode prescribed by statute in Minnesota by which a non-resident *feme covert* could execute a power under seal to pass her interest in real estate.

In January, 1855, there being still apparently no statute in Minnesota of the sort just mentioned, the attorney, professing to act in behalf of Randall and his wife, sold and

conveyed with general warranty the land, in consideration of $3000, to one Kreiger. The deed to Kreiger was in conformity to the local law of Minnesota, and the sum for which he purchased the land—one apparently fair—was paid to Randall, the husband.

On the 24th of February, 1857, the legislature of Minnesota, then still a Territory of the United States, passed an act in these words:*

"A husband and wife may convey by their lawful agent or attorney any estate or interest in any lands, situate in this Territory; and *all* deeds of conveyance of any such lands, whether *heretofore* or hereafter made, under a joint power of attorney from the husband and wife, shall be as binding and have the same effect as if made and executed by the original parties."

In May, 1859, Randall and his wife by an instrument duly executed revoked the power of attorney made in 1849. Randall himself soon afterwards died, leaving to his wife his entire estate; the same consisting wholly of personalty, and being estimated as worth between $100,000 and $200,-000. She had already received of it more than $50,000.

The value of the property now was $7000, independently of improvements put upon it after the conveyance.

The claim of the widow was resisted on several grounds; among them that any defect in her acknowledgment had been remedied by the curative act of 1857; that the purchase-money having been paid to her husband, and having passed to and been accepted by her, she was estopped while still holding it to claim dower in addition; that she had elected to take the provision made by her husband's will, and which was inconsistent with the claim to dower now set up, &c., &c.

But the only question considered by the court, was the one whether the case fell within the curative part of the above-quoted act of 1857; the concluding portion which enacts that all deeds of conveyance in the Territory made *prior* to the passage of the act under a joint power of attorney, from

---

* Laws of Minnesota for 1857, p. 29.

the husband and wife, shall be as binding and have the same effect as if made by the original party.

The court below (Dillon, J.), said :

"I am of opinion that the case falls within the curative or remedial provisions of the act of 1857, and that this act, having been passed before the right to dower became consummated by the death of the husband, is a valid exercise of legislative power.

"Until the death of the husband the right to dower is inchoate and contingent. It becomes consummate only upon that event. In my opinion, the better view is that while the right remains inchoate it is as respects the wife under the absolute control of the legislature, which may, by general enactments, change, abridge, or even destroy it, as its judgment may dictate.* 'So,' says Wright, C. J., in *Lucas* v. *Sawyer*, just cited, 'the legislature may declare what acts of the wife shall amount to a relinquishment of her right of dower, or that her deed shall be effectual to bar the same.' Again he says : 'In measuring her rights we look to the law in force at the time of the husband's death, for it is this event which ripens or makes consummate the prior right, which, so long as it rested upon the marriage and seizure, was inchoate only. If there was no law in force at that time giving her the right, then it is extinguished. She cannot take under a law repealed prior to that time ; and taking a law then existing, she must take it with its restrictions and limitations.'

"It was competent, therefore, for the legislature to say as respects all inchoate rights of dower, as it did say by the act of 1857, that deeds executed under a joint power of attorney from the husband and wife 'shall be binding;' and if binding, the claim of the wife here to dower is barred, for she joined in the power of attorney under which the deed was made.

"Of the constitutionality of the enactment there remains no question after the repeated decisions of the Supreme Court of the United States."†

Judgment being entered on this view, the widow brought the case here on appeal.

---

* Lucas *v.* Sawyer, 17 Iowa, 517, 521.

† Satterlee *v.* Matthewson, 2 Peters, 380; Watson *v.* Mercer, 8 Id. 88; and see 2 Scribner on Dower, 344–366; Cooley, Constitutional Limitations, 373–378.

*Mr. Lorenzo Allis, for the appellant:*

We will address ourselves to the point taken by the court below, that point being conclusive of the case if it is well taken:

1. The authorities all concur in asserting the doctrine that the statutory formalities of the execution and acknowledgment of a deed by a married woman, affecting her real estate, are a *part of the execution* of the deed, and not mere matters of *proof* or evidence of such execution;* and no court has gone farther in sustaining this doctrine than has this court. *Drury* v. *Foster*† applies the rule rigidly in a case so hard, that if the rule had been capable of relaxation it would have been there relaxed. As to the wife the instrument signed by her vested no power whatever in the so-called attorney. It was under that decision absolutely without effect for any purpose. It was not *her* act or deed. It was as to her no deed, no letter of attorney. The law is the same under a leading decision in Minnesota.‡

Where, indeed, there has been a *defective* conveyance or grant, the legislature may cure the defect, if the defect relates merely to the evidence, or proof of the conveyance. The legislature may also make a defective conveyance good between the parties to it, provided such defective conveyance amounts to a contract between the parties which a court of equity would enforce. But if the defective instrument, as here, under the authorities cited, is void; if it is neither a conveyance nor a contract to convey; if it grant or convey nothing, either in law or *in equity*, the legislature cannot make it valid and operative by any retrospective and curative act.§

The rule relative to retrospective acts made to cure defective conveyances is thus properly stated in *Chestnut* v. *Shane's Lessee :*‖

---

* Dodge v. Hollinshead, 6 Minnesota, 25; Kirk v. Dean, 2 Binney, 341; Thompson v. Morrow, 5 Sergeant & Rawle, 289; Drury v. Foster, 2 Wallace, 33.

† 2 Wallace, 33.       ‡ Thompson et al. v. Morgan, 6 Minnesota, 295.

§ Meighen et al. v. Strong, Ib. 177, 181.       ‖ 16 Ohio, 599.

"The act operates only upon that class of deeds where enough had been done to show that a court of chancery ought in each case to render a decree for a conveyance, assuming that the certificate was not such as the law required; and that when a title in equity was such that a court of chancery ought to interfere and decree a good legal title, it was within the power of the legislature to confirm the deed without subjecting an indefinite number to the useless expense of unnecessary litigation."

That is to say, it is competent for the legislature, by a retrospective act, to turn a mere equitable title into a good legal title.

But, a power of attorney, uncoupled with any interest in the attorney, is not a contract between the parties thereto. There is no such thing as a letter of attorney (uncoupled with any interest) which is good in equity but bad at law. There can be no such thing as an instrument which, though not in itself amounting to a letter of attorney, would be a *contract* for such letter, in the absence of any interest of the grantee therein. No retrospective and curative legislation, therefore, can, in the nature of things, be applicable to naked powers of attorney except such as relate to the *proofs* or *evidence* of their execution.

No court of equity will interfere to compel a married woman to ratify a void letter of attorney, nor to compel her to execute or complete a conveyance attempted to be made under a void letter of attorney. No court of equity would compel the plaintiff in this cause to recognize as her deed an instrument which she never executed. A court of equity would refuse to act for no reason, however, but that the estate equitable as well as legal still belongs to the woman; that she has never conveyed *any* thing; that the land is still her property wholly unaffected, even in conscience, by what she has done.

If this is the ground on which a court of equity acts, what power can there be in the legislature to act in an opposite way? The question involved is not one of *defective* execution or of the sufficiency of the *proofs* of execution, but of

the *capacity* of the party to execute at all.   How then can the legislature declare that acts which have been done by married women, when they had no capacity to do them, shall be valid acts ?

We are aware that it has been held in some of the States, that curative legislation may be applied to defective deeds executed by married women affecting their own separate real estate.   But in all these cases it will be found that statutes exist *enabling* a married woman to charge, convey, and make contracts affecting her separate real estate.

Hence courts of equity would compel her to complete and make good her defective conveyances, on the ground that these deeds, though bad as conveyances, were good as contracts which she was by law capable of making.   If this would be the position she would occupy in a court of equity relative to her defective deeds, no doubt the legislature could to the same extent apply the remedy by retrospective and curative legislation.

But we do not see that a married woman could possibly stand in this position respecting her dower.

She cannot convey or assign her inchoate right of dower, though she can, by performing a certain act specified by statute, *bar* it.   That is to say, by the performance of the specified act she is thereafter estopped from asserting her dower.[*]

Now, it is not perceived how the legislature can convert a past act which, when it was done, was not a matter of estoppel at all, into an estoppel.

Moreover, these subsequent curative acts cannot be made to affect this letter of attorney *so far as the plaintiff is concerned,* upon the assumption that they merely carry into effect her intentions.   She was at the time, and continued to be until 1857, *incapable* of barring her dower by power of attorney.   She could not, therefore, in reason, be held as *intending* to do what she was absolutely *without the capacity* to do.

---

[*] Malloney *v.* Horan, 49 New York, 117–120.

2. This learned judge below, says:

"Until the death of the husband the right to dower is inchoate, and contingent. It becomes consummate only upon that event. In my opinion the better view is that while the right remains inchoate, it is, as respects the wife, under the absolute control of the legislature, which may, by *general enactment,* change, abridge, or even destroy it, as its judgment may dictate."

Concede that this is a correct statement of the law. But *is* the act of the 24th February, 1857, a "general enactment," changing, abridging, or destroying the inchoate right of dower of married women? It does not purport to be such an act. And it does not have any effect of such an act even under the construction given it by the learned judge below. It is an act which, at best, selects out of all the married women certain individuals, to wit, those who may have signed powers of attorney jointly with their husbands under which deeds of conveyance may have been made, and legislates in regard to these individuals by taking away or "destroying" their inchoate right of dower.

Such legislation is unconstitutional. The legislature cannot select from married women particular individuals, nor even a particular class of married women, and declare that such particular individuals, or particular class, shall have no dower in the lands of their husbands, while married women generally do have such dower.*

The plaintiff's right of dower in these lands was, then, not *taken away or "destroyed"* by the act of the 24th February, 1857.

3. But we do not assent to the doctrine that while the right of dower of married women remains inchoate it is under the absolute control of the legislature.

On the contrary, we think that the better opinion and reason are that the *concurrence of marriage and seisin* vests in the wife such a right in the lands of her husband as cannot be impaired by subsequent legislation.

---

* Cooley's Constitutional Limitations, pages 390-3, edition of 1868.

It is laid down in *Lawrence* v. *Miller*,* and we think upon abundant reason and authority, that the law of dower which existed at the time of the marriage and seisin of the husband, is the law of the contract which the husband and wife entered into by their marriage.

*Mr. H. J. Horn, contra:*

The ground on which the case is rested by the court below is a sound one.   This is settled by numerous authorities,† and is the especial law for this court, in one of whose decisions, *Watson* v. *Mercer*,‡ it is said in terms :

" The decided weight of authority is in favor of the doctrine that the right to dower may at any time before the husband's death, be enlarged, abridged, or entirely taken away."

But the case need not be rested solely on that ground. There are other grounds independent of it, and like it conclusive.

1. The deed having been one with warranty, and the appellant being the sole legatee and devisee under the will of her husband, and having claimed under it, she cannot in equity be allowed to maintain what is in effect a suit against the estate of her husband, since if she recover her dower his warranty is thereby broken, and his estate liable on the covenants in the husband's deed.

The only effect of a recovery by the appellant in this suit would be to subject the respondent to the burden of instituting a suit in another State to compel the appellant to restore the value of what she might obtain herein, which would result in injustice and circuity of action.

2. The appellant being provided for in her husband's will,

---

* 2 Comstock, 250–252; and see Johnson v. Vandyke, 6 McLean, 423, 440–443; 4 Kent, 35, 36, 50 (marginal).

† Underwood v. Lilly, 10 Sergeant & Rawle, 97; Barnett v. Bareti, 15 Id. 72; Tate v. Stooltzfoos, 16 Id. 55; Chestnut v. Shane, 16 Ohio, 599; Matthewson v. Spencer, 3 Sneed, 513; Rainey v. Gordon, 6 Humphreys, 345; Noel v. Ewing, 9 Indiana, 37; Franz v. Harrow, 13 Id. 507; Galbraith v. Gray, 20 Id. 290; Lucas v Sawyer, 17 Iowa, 517; Moore v. City of New York, 4 Selden, 110; Satterlee v. Matthewson, 2 Peters, 380.

‡ 8 Peters, 88.

and having accepted the provisions thereof by receiving $50,000 thereunder, has elected to take the provisions so made in preference to dower.*

3. The appellant being a non-resident could not have dower in land of which her husband did not die seized.†

4. The statutes in force in Minnesota in 1849, the time when the letter of attorney in question was executed, removed all disability from a *feme covert* in relation to releasing her dower. She was rendered competent alone, without joining her husband, to release her dower " in like manner as if she were sole."

[This point the learned counsel argued on citations of statutes governing Wisconsin Territory, and which he sought to show had been adopted in Minnesota.]

Mr. Justice SWAYNE delivered the opinion of the court.

There is no controversy between the parties as to the facts.

When the power of attorney was given there was no law of Minnesota authorizing such an instrument to be executed by husband or wife, or the attorney to convey under it.

The validity of the deed as respects Randall, the husband, is not questioned, but its efficacy as to the widow, the appellant in this case, is denied. Her claim to dower is resisted upon several grounds, and among them that the defect in the deed was remedied by the curative act of 1857.

We have found it necessary to consider only the point just stated.

It is not objected that the act of 1857, as regards its application to the present case, is in conflict with the constitution of the State. We have carefully examined that instrument and have found nothing bearing upon the subject.

---

* Section 18, chapter 49, p. 219, of Revised Statutes of Minnesota of 1851; Section 18, chapter 48, p. 362, of the General Statutes of Minnesota, 1866; Read *v.* Dickerman, 12 *Pickering, 146,* construing a statute in Massachusetts similar to the one above cited.

† Section 21, chapter 49, of the revision of 1851, p. 219; Section 21, of chapter 48, of the revision of 1866, p. 362; Pratt *v.* Tefft, 14 Michigan, 191, construing provisions the same with these in the law of Michigan.

Nor was the act forbidden by the Constitution of the United States.

There is nothing in that instrument which prohibits the legislature of a State or Territory from exercising judicial functions, nor from passing an act which divests rights vested by law, provided its effect be not to impair the obligation of a contract. Contracts are not impaired but confirmed by curative statutes.*

Marriage is an institution founded upon mutual consent. That consent is a contract, but it is one *sui generis.* Its peculiarities are very marked. It supersedes all other contracts between the parties, and with certain exceptions it is inconsistent with the power to make any new ones. It may be entered into by persons under the age of lawful majority. It can be neither cancelled nor altered at the will of the parties upon any new consideration. The public will and policy controls their will. An entire failure of the power to fulfil by one of the parties, as in cases of permanent insanity, does not release the other from the pre-existing obligation. In view of the law it is still as binding as if the parties were as they were when the marriage was entered into. Perhaps the only element of a contract, in the ordinary acceptation of the term, that exists is that the consent of the parties is necessary to create the relation. It is the most important transaction of life. The happiness of those who assume its ties usually depends upon it more than upon anything else. An eminent writer has said it is the basis of the entire fabric of all civilized society.†

By the common law, where there was no ante-nuptial contract, certain incidents belonged to the relation.

Among them were the estate of tenant by the courtesy on the part of the husband if issue was born alive and he survived the wife, and on her part dower if she survived the husband. Dower by the common law was of three kinds: *Ad ostium ecclesiæ, Ex assensu patris*, and that which in the absence of the others the law prescribed. The two former

---

* Satterlee *v.* Matthewson, 2 Peters, 380; Watson *v.* Mercer, 8 Id. 110.

† Story's Conflict of Laws, § 109.

were founded in contract. The latter was the creature of the law. Dower *Ad ostium ecclesiæ* and *Ex assensu patris* were abolished in England by a statute of the 3d and 4th William IV, ch. 105. The dower given by law is the only kind which has since existed in England, and it is believed to be the only kind which ever obtained in this country.

During the life of the husband the right is a mere expectancy or possibility. In that condition of things, the law-making power may deal with it as may be deemed proper. It is not a natural right. It is wholly given by law, and the power that gave it may increase, diminish, or otherwise alter it, or wholly take it away. It is upon the same footing with the expectancy of heirs, apparent or presumptive, before the death of the ancestor. Until that event occurs the law of descent and distribution may be moulded according to the will of the legislature.

Laws upon those subjects in such cases take effect at once, in all respects as if they had preceded the birth of such persons then living. Upon the death of the husband and the ancestor the rights of the widow and the heirs become fixed and vested. Thereafter their titles respectively rest upon the same foundation, and are protected by the same sanctions as other rights of property.*

The power of a legislature under the circumstances of this case to pass laws giving validity to past deeds which were before ineffectual is well settled.†

In *Watson* v. *Mercer*,‡ the title to the premises in controversy was originally in Margaret Mercer, the wife of James Mercer. For the purpose of transferring the title to her husband, they conveyed to a third person, who immediately conveyed to James Mercer. The deed of Mercer and wife bore date of the 30th of May, 1785. It was fatally defective

---

* 2 Scribner on Dower, pp. 5–8; Lawrence *v.* Miller, 1 Sandford's Supreme Court, 516; Same Case, 2 Comstock, 245; Noel and wife *v.* Ewing et al., 9 Indiana, 37; Lucas *v.* Sawyer, 17 Iowa, 517; White *v.* White, 5 Barbour, 474; Vartie *v.* Underwood and wife, 18 Id. 561.

† Sedwick on Statutory and Constitutional Law, 144, note; Cooley on Constitutional Limitations, 376.     ‡ 8 Peters, 100.

as to the wife in not having been acknowledged by her in conformity with the provision of the statute of Pennsylvania of 1770, touching the conveyance of real estate by *femes covert*. She died without issue. James Mercer died leaving children by a former marriage. After the death of both. parties, her heirs sued his heirs in ejectment for the premises and recovered. The Supreme Court of the State affirmed the judgment. In 1826 the legislature passed an act which cured the defective acknowledgment of Mary Mercer, and gave the same validity to the deed as if it had been well executed originally on her part. The heirs of James Mercer thereupon sued her heirs and recovered back the same premises. This judgment was also affirmed by the Supreme Court of the State, and the judgment of affirmance was affirmed by this court. This case is conclusive of the one before us.*

To the objection that such laws violate vested rights of property it has been forcibly answered that there can be no vested right to do wrong. Claims contrary to justice and equity cannot be regarded as of that character. Consent to remedy the wrong is to be presumed. The only right taken away is the right dishonestly to repudiate an honest contract or conveyance to the injury of the other party. Even where no remedy could be had in the courts the vested right is usually unattended with the slightest equity.†

There is nothing in the record persuasive to any relaxation in favor of the appellant of the legal principles which, as we have shown, apply with fatal effect to her case. The curative act of 1857 has a strong natural equity at its root. It did for her what she attempted to do, intended to do, and doubtless believed she had done, and for doing which her husband was fully paid.

---

* See also Calder v. Bull, 3 Dallas, 388; Wilkinson v. Leland, 2 Peters, 627; Livingston v. Moore, 7 Id. 486; Kearney et al v. Taylor et al., 15 Howard, 495; Chestnut v. Shane, 16 Ohio, 599; Goshorn v. Purcell, 11 Ohio State, 641; Lessee of Watson v. Bailey, 1 Binney, 477; Gibson v. Hibbard, 13 Michigan, 215; Foster v. Essex Bank, 16 Massachusetts, 245; State v. Newark, 3 Dutcher, 197.

† Cooley's Constitutional Limitations, 378.

The purchase-money for the lot became a part of his estate, and the entire estate was given to her at his death. Not satisfied with this she seeks to fasten her dower upon the property in question.

The act accomplished what a court of equity, if called upon, would have decreed promptly as to the husband, and would have failed to decree as to the wife only from the want of power. The unbending rule of law as to *femes covert* in such cases would have prevented it. The legislature thus did what right and justice demanded, and the act strongly commends itself to the conscience and approbation of the judicial mind.

DECREE AFFIRMED.

