### HORST v. UNITED STATES et al.

(District Court, S. D. Ohio, W. D.   July 29, 1922.   August 3, 1922.)

#### No. 217.

1. .Army and navy ☞51½, New, vol. 12A Key-No. Series—Beneficiary of war risk insurance may be shown by extrinsic evidence; will held effective designation.

Where an application for war risk insurance, and the certificate issued thereon named no beneficiary, extrinsic evidence was admissible to show that the soldier desired to designate an aunt, his foster mother, but, being advised that she was not eligible under the law, omitted any designation and executed a will bequeathing the insurance to her. · Such will *held* an effective designation, under War Risk Insurance Act, § 22, as added by Act Oct. 6, 1917, § 2, and amended by Act Dec. 24, 1919, § 2.

2. Army and navy ☞51½, New, vol. 12A Key-No. Series—Amendment of War Risk Insurance Act validates designation of beneficiary previously ineligible.

Where the beneficiary of war risk insurance designated and intended by the assured soldier and his insuring officers, and who was the natural and proper beneficiary, was ineligible under the statute at the time, but was made eligible by War Risk Insurance Act, § 22, as added by Act Oct. 6, 1917, § 2, and amended by Act Dec. 24, 1919, § 2, such amendment made the designation effective as against those who would otherwise have received the benefit, though enacted after the death of the soldier.

3. Constitutional law ☞92—Contracts may be validated by curative act.

Where a transaction between private persons is invalid, because of an informality or defect affecting the public alone, the Legislature may by subsequent statute waive the objection, and validate the transaction, and this is not a disturbance of vested rights.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Equity. Suit by Catherine Horst against the United States and others. Decree for complainant.

Robert Black, of Cincinnati, Ohio, for plaintiff.

Thomas H. Morrow, U. S. Atty., of Cincinnati, Ohio, and E. H. Horton, Asst. Counsel U. S. Veterans Bureau, of Washington, D. C., for the United States.

Walter W. Helmholz, of Cincinnati, Ohio, and Page & Hurt, of Los Angeles, Cal., for other defendants.

PECK, District Judge. Bill in equity for the proceeds of a certificate of war risk insurance issued by the government upon the life of Albert R. Marshall. The plaintiff, foster mother and aunt, claims as designated beneficiary within the class permitted under the amendment of December 24, 1919 (41 Stat. 371). The individual defendants (hereinafter called simply defendants), half brothers and sisters, claim by their guardian, under the War Risk Insurance Act of October 6, 1917 (40 Stat. 398 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 514a et seq.]), as statutory beneficiaries, upon failure of the assured to designate one within the class permitted by the law at the date of his death. The government, having paid the defendants the benefits accrued from that date to the effective date of the amendment, asks that those payments be undisturbed, but that installments due from and after the latter date be decreed to the plaintiff.

Albert R. Marshall was a soldier of the American Marines. He enlisted April 19, 1917, at the age of 16. In his childhood his parents had been divorced; custody of the boy having been awarded to his mother. She later married Henry W. Helmholz, and the defendants are the children of this marriage, and so, as aforesaid, half brothers and sisters of Albert. In July, 1913, the mother, being ill and realizing that she was about to die, sent for her sister, the plaintiff, Catherine Horst, told her that she was worried about Albert's future, because he did not get along well with his stepfather, and asked her to take the boy and raise him. Mrs. Horst promised to do so. Shortly afterwards, the mother having died, plaintiff took Albert into her household, and thereafter reared and supported him. No one else contributed. She signed the necessary documents giving consent to his enlistment, as he was under age when he joined the Marine Corps.

In January, 1918, when stationed at Lormont, France, he made application on the prescribed form, duly signed and witnessed, for war risk insurance in the sum of $10,000, payable to himself during total permanent disability, and from and after his death to the plaintiff. He wrote his aunt:

"I have a death or disability insurance of $10,000, with you as beneficiary in case of death"

—and to an uncle:

"I have taken insurance for disability or death. The amount is $10,000, and I have made it out with Aunt Kate beneficiary, in case a Boche gets the best of me, which I think is not very likely."

The company clerk, however, told him that an aunt could not be beneficiary under the law. He declined to designate any other, and the mat-

ter was taken up with the captain and first lieutenant. They, after consideration, advised him to name no beneficiary in his application, but to make a will leaving the proceeds to his aunt, and that thus she would receive the benefits in case of his death. The original application was thereupon destroyed.

Upon January 23, 1918, he signed another application for the insurance, payable from and after his death "to the following persons, in the following amounts—name of beneficiary—has no relative." This was also duly signed and witnessed, and a certificate of insurance was issued. This certificate was in brief form, merely declaring that Marshall had applied for insurance in the amount of $10,000, payable in case of death or total permanent disability in monthly installments of $57.50; that the insurance was granted under the authority of the Act of October 6, 1917, subject to the payment of the premiums required, and to the provisions of the act and any amendments thereto, and of all regulations thereunder then in force or thereafter adopted, all of which, together with the application and the terms and conditions published under authority of the act, were to constitute the contract. No payee in case of death was therein designated.

On February 3, 1918, Marshall executed a brief will, with four soldiers of his regiment as witnesses, in which he bequeathed to his aunt all money or insurance and any other possessions. On the same day he wrote his aunt, repeating that he had taken out the insurance, stating:

"And as I had no one dependent on me for support, or no one to make it out to that was eligible according to the Gov. views, I had to make it out to myself, and in case of my death I am making out a will leaving the $10,000 to you; in case I get my passports here, you can collect. I could have made it out to my Dad, and saved some red tape; but you know, as long as you live, he will get nothing from me."

He was mortally wounded at Belleau Wood, and died June 14, 1918. The War Risk Insurance Bureau awarded the benefits of the certificate to the defendants, and paid the same to them until the amendment of December 24, 1919.

By section 402 (40 Stat. p. 409 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 514uuu]) of the War Risk Insurance Act as originally adopted October 6, 1917, it was provided that the insurance should be payable only to a spouse, child, grandchild, parent, brother, or sister, and during total and permanent disability, to the insured, in 240 equal monthly installments; that the insured should have the right to change the beneficiary, either by designation in his lifetime or by will, but only within the classes in the act provided; that, if no beneficiary within the permitted class were designated, the insurance should be payable to such person or persons within that class as would under the laws of the state of the residence of the insured be entitled to his personal property in case of intestacy; that, if there were no surviving relatives within the permitted class, there should be paid to the estate of the assured, not the face of the policy, but only an amount equal to the reserve value, if any. By section 22 (40 Stat. 401 [section 514mmm]) the terms "brother" and "sister" included those of the half blood. Under the statute of Ohio (section 8574, General Code), brothers and sisters of the half blood take

precedence over a father. And thus the defendants claim as upon default of designated beneficiary.

The act further provided that the United States should bear the expenses of administration and the excess mortality and disability cost resulting from the hazards of war; that the premium rate should be the net rate based upon the American Experience Table of Mortality, and interest of 3½ per centum per annum. The result of this was that the soldiers were insured by the government at net cost on peace-time rates. It was stated in the debates in Congress that the lowest bid for the carrying of this insurance secured by the government from a recognized life insurance company was $58 per $1,000. The greater part of the insurance cost, therefore, was borne by the government, and not by the soldier.

Inasmuch as the government carried the larger portion of the cost, it was, of course, wise and just to limit the permitted class of beneficiaries to those who might properly be the objects of the soldier's solicitude and care. But it turned out that in a great many instances the permitted class did not embrace the one whom the soldier justly regarded as his proper beneficiary. There were those with whom ties, remote by blood, were close by association, or by natural, as distinguished from legal, adoption. Therefore, upon December 24, 1919, an amendment was passed by Congress (41 Stat. 371) providing that the terms "father" and "mother" should include, not only those thus placed by adoption, but also those who had stood in loco parentis for a year or more prior to the enlistment of the soldier; that the permitted class should be enlarged to include uncles, aunts, nephews, nieces, brothers-in-law, and sisters-in-law; that these provisions should be as though contained in the original act; and that all awards of insurance made to the effective date of the amendment should be revised accordingly.

Mrs. Horst claims under this amendment as the one who was the designated beneficiary. The defendants, by their guardian (who has, of course, no power to waive their rights), forcefully claim that Mrs. Horst was never designated as beneficiary; that Marshall's will is void, because he was under age, and so not capable of transmitting property by will under the laws of Ohio (G. C. § 10503); that, even had he been capable of making a will, still it would be ineffective as designating one not, up to the time of his death, within the permitted class; that defendants' rights became vested when Marshall died, and not subject to be divested by any subsequent act of Congress; that the amendment is therefore to be read as affecting the insurance of only those soldiers who died after the date of its passage; and that to construe it otherwise would deprive them of their vested property without due process of law, and so be contrary to the Fifth Amendment.

Two vital questions arise upon this state of facts: (1) Was the plaintiff designated as beneficiary? (2) If so, can such designation be given effect without impairing vested rights of the individual defendants?

[1] 1. In his application, as has been seen, Marshall named no beneficiary, merely asserting that he had no relatives. This assertion was doubtless made for the purpose of denying the right of any, except his aunt, whom he intended to designate by will. The name of the beneficiary, therefore, must be sought elsewhere than upon the face of the

documents. If the name of the person for whose benefit the insurance is obtained does not appear upon the face of the certificate, or if the description of the assured is imperfect or ambiguous, so that it cannot be understood without explanation, extrinsic evidence may be resorted to for the purpose of ascertaining the meaning of the contract, and when thus ascertained the designation will be held to apply to the interests intended to be covered by it, and those persons will be deemed to be comprehended within it who were in the minds of the parties when the contract was made. Such designation partakes rather of the nature of a will than of a contract, and the inquiry should be to ascertain the true intent of the applicant. This must be especially true in the case of insurance of soldiers on the battlefield, where the facilities for the careful drafting of legal instruments are wanting. 1 Bacon on Life and Accident Insurance, § 340; Clinton v. Hope Ins. Co., 45 N. Y. 454; Globe Ins. Co. v. Boyle et al., 21 Ohio St. 119; Pace v. Pace, 19 Fla. 438; Renfro v. Ins. Co., 148 Mo. App. 258, 129 S. W. 444; Knights Templars, etc., Ass'n v. Greene (C. C.) 79 Fed. 461; Union Mutual Ass'n v. Montgomery, 70 Mich. 587, 38 N. W. 588, 14 Am. St. Rep. 519; Duvall v. Goodson, 79 Ky. 224, 228. Viewed in the light of this rule, as exemplified by the foregoing authorities, there is no difficulty in arriving at the conclusion that the plaintiff was the designated beneficiary of this certificate of insurance.

[2] 2. Have the defendants a right to the proceeds which vested at Marshall's death and was beyond the reach of the amendment to the act? They can, of course, claim nothing by the express terms of the contract. They were not designated as beneficiaries; and more, Marshall obviously attempted to deny them that capacity. To pay them the money is not to effectuate any purpose that he ever had, or to give force to any arrangement that he thought he was making, but directly the reverse.

[3] The arrangement attempted between Marshall and his company officers was, in short, that he should pay the premiums, and that his aunt should get the benefits in event of his death. Regarded as an agreement, it was invalid, because the beneficiary was beyond the permitted class; but the provision of the law limiting beneficiaries to the permitted class was inserted for the benefit of the public, in order to prevent the proceeds of insurance, the cost of which the public was largely carrying, from being paid to those who had no moral claims upon the bounty or gratitude of the public. Where a transaction between private persons is invalid, because of an informality or defect affecting the public alone, the Legislature may, by subsequent statute, waive the objection and validate the transaction. West Side Belt Electric Railway Co. v. Pittsburgh Construction Co., 219 U. S. 92, 31 Sup. Ct. 196, 55 L. Ed. 107. This being true, the government certainly may waive its objection when it is the other contracting party. As between Marshall and the government, to apply the amendatory act validating such designation does not violate the contract, but, on the contrary, merely gives effect to the true intent and real understanding arrived at between him and his superior officers, who were the government's agents for the making of the insurance.

Therefore it is thought that, as between the assured soldier and the government, an ascertained designation of one intended by both the soldier and his insuring officers to be the beneficiary, and who was the natural object of the soldier's solicitude and bounty, but who was at that time beyond the statutory class of permitted beneficiaries, may be validated by the government, so that the contract of insurance will conform to the true intent of the parties aforesaid; the government being both lawmaker and insurer. Satterlee v. Matthewson, 2 Pet. 380, 7 L. Ed. 458; Watson v. Mercer, 8 Pet. 88, 8 L. Ed. 876; Thompson v. Lee County, 3 Wall. 327, 18 L. Ed. 177; Randall v. Krieger, 23 Wall. 137, 149, 23 L. Ed. 124; Mattingly v. District of Columbia, 97 U. S. 687, 24 L. Ed. 1098; Grenada County Supervisors v. Brogden et al., 112 U. S. 261, 262, 5 Sup. Ct. 125, 28 L. Ed. 704; Turpin v. Lemon, 187 U. S. 51, 57, 23 Sup. Ct. 20, 47 L. Ed. 70; United States v. Heinszen & Co., 206 U. S. 370, 382, 27 Sup. Ct. 742, 51 L. Ed. 1098, 11 Ann. Cas. 688.

While the defendants had a vested right to their interest under the contract, that right could in no event rise higher than the contract itself, meaning thereby the true agreement expressing the real intention of the parties. If, as has been concluded, the designation was subject to validation, it was so ab initio. The power of the government to so recognize such a designation as determinative of its moral obligation to pay the insurance to the soldier's natural and proper beneficiary selected by him, and to validate it so as to give it effect, was as inherent in the contract as was any other part of the law. The Supreme Court, speaking by Mr. Justice Swayne, in Randall v. Krieger, supra, said:

"To the objection that such laws violate vested rights of property it has been forcibly answered that there can be no vested right to do wrong. Claims contrary to justice and equity cannot be regarded as of that character. Consent to remedy the wrong is to be presumed."

Therefore, regarding the contract as one that was curable from its inception, there was no disturbance of vested rights when Congress validated it. It is concluded that those who claim the benefits of a soldier's certificate only by reason of the original invalidity of a curable designation of beneficiary have no paramount rights that can survive an act of Congress curing such designation after the soldier's death. Gross v. U. S. Mortgage Co., 108 U. S. 477, 2 Sup. Ct. 940, 27 L. Ed. 795; Cassarello v. United States (D. C.) 271 Fed. 486, affirmed (C. C. A.) 279 Fed. 396.

The plaintiff, as the legally designated beneficiary, may have a decree for the payment of benefits accruing and to accrue from and after the effective date prescribed by the amendment, viz. March 1, 1920.

### Addenda to Opinion.

Upon an informal motion to modify the foregoing opinion, it appears that the benefits were paid to the defendants up to about the time of the bringing of the bill; that the answer of the government asks that they be decreed to the plaintiff only from that time; and that plaintiff, by counsel, waives claim to the benefits payable up to that date. Therefore the decree will be that the plaintiff stand as the designated beneficiary, and receive the benefits according to law, from and after date of the institution of this action.