## GILMAN HEIRS v. UNITED STATES.

(District Court, M. D. Pennsylvania. July 2, 1923.)

No. 1364.

1. Army and navy ☞51½, New, vol. 12A Key-No. Series—Amendment of War Risk Insurance Act validates designation of beneficiary previously ineligible.

Where the beneficiary of war risk insurance designated in the contract was at the time ineligible under the statute, but was made eligible by the amendatory act of December 24, 1919, such amendment though enacted after the soldier's death, made the designation effective as to subsequently maturing installments, as against persons who for failure of a designated beneficiary received the installments maturing previously as heirs at law, but who had no vested interest in future installments.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Constitutional law ⬅️194—Contracts may be validated by curative act.**

Laws validating contracts and conveyances theretofore invalid to carry out the true intent and purpose of the parties are within the constitutional authority and power of Congress.

At Law. Action by the Gilman Heirs against the United States. Judgment for the United States.

R. W. Archbald, of Scranton, Pa., for plaintiffs.

M. J. Martin, of Scranton, Pa., A. B. Dunsmore, of Wellsboro, Pa., and E. H. Horton, of Washington, D. C., for the United States.

WITMER, District Judge. On August 1, 1918, Bernard McGloin, a soldier in the service of the United States of America, took out war risk insurance in the sum of $10,000, and this was in full force and effect at the time of his death, which occurred while in service, October 16, 1918. In his application for the insurance, he designated James McDonough, $5,000, and Mary Boughton, $5,000, as his beneficiaries, naming them as stepbrother and stepsister. On October 7, 1918, this designation was changed, and Mary Boughton was made the sole beneficiary.

At the time the insurance was taken out, as well as when the change in the beneficiary was made, Mary Boughton was not within any of the classes of beneficiaries permitted by the statute, being a cousin, and not a stepsister; the mother of the soldier and the mother of Mary Boughton being sisters. This was the situation when Bernard McGloin died, and in accordance with section 402, Act of October 6, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 514uuu), which was in force at the time, the insurance thereupon became payable to the plaintiffs, who are the half-sister and half-brothers of the soldier, being the children of the same mother by a subsequent marriage, and being entitled as his next of kin, by the laws of Pennsylvania, to his personal property in case of intestacy.

From the death of the soldier up to March 1, 1920, the monthly installments of $57.50, provided for in the insurance certificate, were paid by the government each and every month to the guardian of the plaintiffs, who were then, as they are now, under age. On December 24, 1919, an act of Congress was passed (41 Stat. 371, § 4 [5a]) which enlarged the permitted beneficiaries, so as to include, under the terms brother and sister, "the children of a person who, for a period of not less than one year, stood in loco parentis" to the soldier, "at any time prior to his enlistment or induction, or another member of the same household, as to whom such person during such period likewise stood in loco parentis," and by a proviso it is declared that this enactment "shall be deemed to be in effect as of October 6, 1917." Bernard McGloin, the soldier, was a member of the household of Mary Boughton's mother, who stood in the relation of a parent to him, and Mary Boughton was thus a foster sister and came within the terms of the amended act.

[1] It is argued by plaintiffs' counsel that the right to the insurance money became vested in the Gilman children upon the death of

Bernard McGloin on October 16, 1918; that, being the sister and brothers of the half-blood, they were entitled, under the laws of Pennsylvania, to the personal property of Bernard McGloin (Act June 7, 1917, § 9 [a], P. L. 436 [Pa. St. 1920, § 8364] and section 15 [b], P. L. 439 [Pa. St. 1920, § 8380]), and therefore, by the terms of the War Insurance Act, Mary Boughton being ineligible, they became entitled to the insurance money upon Bernard McGloin's death, and that, furthermore, the right to the insurance money having become vested in the plaintiffs, as the half-sister and half-brothers of the soldier, the same could not thereafter be divested by the Act of Congress of December 24, 1919, or by any other action on the part of the government.

The fallacy with the argument lies in the erroneous assumption that the Gilman children obtained by operation of the act of Congress and the insurance effected thereby a vested interest in the designated installments or payments provided and falling due in the future. In the case of Cassarello v. United States (D. C.) 271 Fed. 486, affirmed by the Circuit Court of Appeals 279 Fed. 396, this court stated that the contract between the government and the insured is not an ordinary contract of insurance, and held that since in principle it lacked the character of a vested interest, the same could not be passed by the last will of the designated beneficiary. In a case similar to the one under consideration, Horst v. United States (D. C.) 283 Fed. 600, it was held that the amending statute was not a disturbance of vested rights, and made the designation of the soldier effective as against those who would otherwise have received a benefit, though enacted after the soldier's death.

As it was in effect said, the contract was one between the insured and the government, and, having through the agents of the latter made a contract which, under the law as it stood when effected, could not be carried out, surely the government through its representations could, and as it reasonably should, make provision whereby the contract as made and understood by the parties, could be given force and effect. This is what the amendatory act seeks to accomplish, and it does not thereby violate vested rights, since none were effected. There was in fact no obligation intended to be effected to pay the plaintiffs insurance. On the contrary, such was intended for the party who now by operation of the amendment may obtain that which was intended for her. As was said in Randall v. Krieger, 23 Wall. 137–149 (23 L. Ed. 124):

"To the objection that such laws [referring to retroactive curative legislation] violate vested rights in property it has been forcibly answered that there can be no vested right to do wrong. Claims contrary to justice and equity cannot be regarded as of that character. Consent to remedy the wrong is to be presumed. The only right taken away is the right dishonestly to repudiate an honest contract or conveyance to the injury of the other party."

[2] It has repeatedly been held that laws validating contracts and conveyances theretofore invalid, to carry out the true intent and purpose of the parties, are within the constitutional authority and power

of Congress. Satterlee v. Matthewson, 2 Pet. 380, 7 L. Ed. 458; Watson v. Mercer, 8 Pet. 88; Randall v. Krieger, 23 Wall. 137, 23 L. Ed. 124; McFaddin v. Evans-Snider-Buel Co., 185 U. S. 505, 22 Sup. Ct. 758, 46 L. Ed. 1012; Turpin v. Lemon, 187 U. S. 51, 23 Sup. Ct. 20, 47 L. Ed. 70; United States v. Hinszen & Co., 206 U. S. 370, 27 Sup. Ct. 742, 51 L. Ed. 1098, 11 Ann. Cas. 688.

Judgment is entered against the plaintiff and for the defendant.