# THE HACKENSACK TRUST COMPANY

*v.*

# MARY KATHERINE TRACY et al.

[Filed January 16th, 1917.]

1. At common law, before issue born alive, the husband had an estate of freehold in his wife's lands during *their joint* lives, and after such issue born, he acquired an estate of freehold in possession in those lands which continued for *his own* life. His interest was termed an estate by the curtesy *initiate* during the wife's life, and *consummate* on her death.

2. The Married Woman's act of 1852 deprived the husband of an estate by the curtesy initiate, that is, an estate of freehold during his wife's lifetime, but did not affect the estate which he took upon her death. On the happening of that event he became entitled to a freehold estate in possession for the remainder of his own life, if there were issue born alive. And a wife cannot deprive her husband of such an estate by deed or will.

3. A husband's estate by the curtesy is not affected by section 7 of the supplement to the Descent act (*P. L. 1915 p. 61*) if the marriage took place before that act went into effect on July 4th, 1915.

4. A husband, after issue born alive, has a vested estate in remainder in his wife's lands. This we now call an inchoate right of curtesy.

5. While a husband, whose wife has not borne a child, has neither an estate by the curtesy initiate nor an inchoate right of curtesy in his wife's lands, he has, nevertheless, a contingent estate in remainder in those lands; because, upon the happening of the contingency of issue born alive and of the husband surviving the wife, he would be entitled to an estate by the curtesy consummate, that is, a freehold estate in possession for the remainder of his life.

6. An estate by the curtesy at common law depends upon four essentials, (1) that the wife be seized of an estate of inheritance to which issue of the marriage may possibly succeed as heir of the wife, (2) that the estate be or become, during coverture, an interest in possession, (3) that seisin in deed (less properly styled actual seisin) be obtained during coverture, and (4) that issue be born alive. The transpiring of these four events constitute the contingency upon which an estate by the curtesy arises, that is, vests, in the husband in possession upon his wife's death.

7. A husband and wife executed mortgages upon her separate real estate which were foreclosed and produced surplus money, which retains the character of real estate for the purpose of succession and distribution,

and the wife filed a petition praying for the payment of the surplus to her, without making her husband a party thereto and without averring whether or not issue had been born to the parties.—*Held*, that in these circumstances the husband is a necessary party to the proceedings as he is entitled to be heard on the question whether, having a contingent estate in remainder in her lands, he is entitled to have the surplus money protected and conserved to admit of his possibly succeeding to the enjoyment of it after her death.

8. Even assuming that a husband has no interest whatever in his wife's lands during her life before the birth of issue, nevertheless, on her petition for the proceeds of the sale of those lands, which are real estate for the purpose of succession and distribution, a presumption that there has been no issue born cannot be indulged in her favor, for his position may not be made worse by implication; besides, a presumption cannot be indulged in her favor on the face of the petition, as it is a rule that in construing a pleading that view must be adopted which is most unfavorable to the pleader.

9. *Quære:* Can a wife, who has not borne her husband a child defeat his possible right to inchoate curtesy, and, ultimately, consummate curtesy, by reason of the involuntary sale of her land under execution producing surplus money, which money retains its character as land for the purpose of succession.

On bill, &c. On petition for surplus moneys.

*Mr. Cornelius W. Berdan,* for the petitioner.

WALKER, CHANCELLOR.

This is a foreclosure suit. Mary Katherine Tracy and James Tracy, her husband, were the only defendants. The bill alleges that both of them were indebted to the complainant, on July 25th, 1912, in the sum of $1,000, and made their mortgage upon certain lands, in the county of Bergen, on that date to secure the debt. The bill also alleges that they were further indebted to the complainant, on June 28th, 1913, in a like sum of $1,000, and made their mortgage upon the same lands on the last-mentioned date to secure that debt. Such proceedings were had in the cause that a final decree was made and entered on August 12th, 1916, in pursuance of which the mortgaged premises were sold by the sheriff for $4,000, leaving $1,680.44 of surplus moneys after the payment of the mortgage debt, principal, interest and costs.

The bill contains no allegation as to the ownership of the mortgaged premises. Mrs. Tracy has filed a petition in which it is averred that the land sold under the writ of execution in this cause was hers, and that she is therefore entitled to receive the surplus moneys, there being now no lien or encumbrance against the land sold.

If Mr. and Mrs. Tracy have had issue born alive then the husband has a vested estate in remainder in his wife's land. *Doremus* v. *Paterson, 69 N. J. Eq. 188, 193; affirmed, Ibid. 775.* And the proceeds of the sale of lands retain the character of real estate for the purpose of succession and distribution. *Oberly* v. *Lerch, 18 N. J. Eq. 346; Servis* v. *Dorn, 76 N. J. Eq. 241.* The petition for surplus contains no averment as to the birth of children; and even if they have not had issue the husband, nevertheless, has a contingent estate in remainder in the wife's lands, as will presently be shown.

In *Leach* v. *Leach, 69 N. J. Eq. 621,* lands belonging to a wife were sold in foreclosure on a mortgage given by her and her husband, and the husband contested the immediate payment of any portion of the surplus to his wife. The parties were married in 1878 and had issue, a daughter, who was still alive. Vice-Chancellor Emery decided that the respective interests of the husband and wife in the proceeds of sale were, that the wife had an estate for her life with remainder to the husband for his life if he should survive her, with remainder over to the wife in fee—meaning, of course, the wife's heirs—if she predeceased her husband. The application of the wife in the *Leach Case* was made under the Chancery act (*Comp. Stat. p. 433 § 60*), which provides that if upon foreclosure there shall be paid into court any money representing an estate in dower or by curtesy, or for life or years, any person entitled to such estate may make application for a sum in gross in lieu thereof and the court shall direct the payment of such sum out of the proceeds of such estate as shall be deemed a just and reasonable satisfaction for the same, and which the person so entitled shall consent in writing to accept in lieu thereof. See, also, *Leach* v. *Leach, 72 N. J. Eq. 571,* which was the same case, on the question of the sum to be paid in gross to the wife.

If it were not for the Married Woman's act of 1852 (*Comp. Stat. p. 3223* § *1*), which provides that the real and personal property of any woman who has married since July 4th, 1852, which she owned at the time of marriage, shall be and continue her sole and separate property, and, section 3, which provides that any such property received or obtained by her in any manner since that date, shall be her sole and separate property, Mrs. Tracy's husband would be entitled to an estate of freehold for their joint lives if there be no issue born, and to an estate by the curtesy initiate in the surplus money in court in this cause if there were issue born alive. Perhaps it is pertinent to here observe what that estate, which has been abrogated by our Married Woman's act, was at common law. It was this:

Before issue born alive, the husband had an estate of freehold in his wife's lands during their joint lives. After such issue born, the husband acquired an estate of freehold in possession in those lands, which continued for his own life. It was termed an estate by the curtesy initiate during his wife's life, and it became consummate on her death. The Married Woman's act deprived the husband of the freehold during his wife's life, but did not affect the estate which he took upon her death. On that event he became entitled to a freehold interest in possession for his own life. The wife could not deprive her husband of this estate by deed or will. *Doremus* v. *Paterson, supra.* If Mr. and Mrs. Tracy had a child born alive, his estate would be one of "inchoate right of curtesy." *Trade Insurance Co.* v. *Barracliff, 45 N. J. Law 543, 550.* And his estate would not be affected by section 7 of the supplement to the Descent act (*P. L. 1915 p. 61*), because their marriage took place before that act went into effect on July 4th, 1915. This appears from the fact that in 1912 and 1913 they made the mortgages which were foreclosed. The section expressly preserves estates, interests and rights of dower and curtesy which became vested before the act took effect. See *Class* v. *Strack, 85 N. J. Eq. 319.* And, undoubtedly, they would have been preserved without the saving clause. *In re Alexander, 53 N. J. Eq. 96.*

The question remains whether in case there has been no issue born to these parties the husband is entitled to any interest in

the surplus money. Vice-Chancellor Emery, in *Leach* v. *Leach, supra*—*72 N. J. Eq.* (at *p. 575*)—says that *Freeman on Partition* lays it down that on the sale and distribution of the proceeds of the sale of lands in partition, the court has the power to determine the value of estates for life and years, and of all future estates vested and contingent, and to direct the amount to be paid to the holders of each of such estates. The impression I got from reading this reference to *Freeman on Partition* was that the learned author was speaking of an inherent power of the court to determine the value of particular estates, but examination of the text of this work discloses that he was speaking only of statutory powers bestowed upon courts by legislation. The vice-chancellor goes on to observe that the conversion of lands into money under a superior right (foreclosure in the case at bar) terminates *ipso facto* precise property rights in the lands, and that the proceeds of sale, in strict legal theory, are held, not as lands, but rather as in lieu of lands for the ultimate purpose of compensating the parties interested in the lands. There is no conflict between this view and the one above mentioned, namely, that the proceeds of the sale of lands retain the character of real estate for the purpose of succession and distribution, for the compensation of the parties is made by way of distribution to those who had estates and rights in the lands sold, and in proportion to their respective interests therein. But this question of the husband's possible interest in the fund, like the wife's, cannot be adjudicated upon the facts before me. It cannot be presumed in favor of the wife that there has been no issue born, in which case she *may* be entitled to all of the surplus money, but if the husband appeared now, by reason of issue born alive, to ultimately have his inchoate right of curtesy become consummate upon the death of the wife during his lifetime, she would only be entitled to an estate for her own life during their joint lives, as we have seen. On the contrary, the presumption of no issue born cannot be indulged against the husband because his position may not be made worse by implication, and, besides, he is not a party to his wife's petition for the surplus money. It is a cardinal rule that everyone who has an interest in the sub-

ject-matter of a judicial proceeding must be brought before the court to enable it to give relief to the applying party.

In *Porch* v. *Fries, 18 N. J. Eq. 204,* Chancellor Zabriskie (at *p. 208*) observes that under the Married Woman's act of 1852 the husband has, during his wife's life, *no interest or estate* in her lands; that she can sell them *with* his assent. Now, if the foreclosure had not taken place, Mrs. Tracy could not have consumed her real estate. Can she, by reason of that untoward circumstance, obtain and consume this surplus money which, as seen, is real estate for the purpose of succession? If she held the real estate, having no child, but, perhaps, having one in the future, then the husband's inchoate right of curtesy would attach and reduce her estate to one for life only while they both lived. Again the question recurs, can she, under our law, deprive her husband of a possible interest which he may acquire in her lands by the birth of issue during their joint lives? The supreme court, in *State, Covert, prosecutor,* v. *Hulick, 33 N. J. Law 307,* observed (at *p. 310*) that the case of *Porch* v. *Fries,* then recently decided in the court of chancery, held that in cases coming within the provisions of the Married Woman's act of 1852, a husband had *no estate or interest* in his wife's land during her life. In this case, surveyors of the highways assessed damages for opening a road, to the wife only, who was the owner of the land, and not to her husband or to him and her jointly. This was held to be right. No question of the distribution of the award appears, and it does not appear whether there were any child or children of the parties. The remarks of Vice-Chancellor Howell *In re Riva, 83 N. J. Eq.* (at *p. 205*), where, speaking of *In re Staheli, 78 N. J. Eq. 74,* he says that the report shows that there were no children in that case, *nor any likelihood of any;* hence the husband had *not, and could not, get* any interest in the wife's land, are pertinent. In the *Staheli Case* (at *p. 76*), Vice-Chancellor Stevenson notices the question of the deprivation of a husband's possible curtesy in certain circumstances, and says (at *p. 77*) that there had been *no issue* of the marriage, and it was apparent that there *would be none,* and that, practically, the sole interest of the husband lay in the power he held to prevent his wife from conveying her property.

So far as I can find, the question as to whether a wife who has not borne her husband a child can defeat his possible right to inchoate curtesy, and, ultimately, consummate curtesy, by reason of the involuntary sale of her land under execution producing surplus money, which money retains its character as land for the purpose of succession, has not been decided.

The decided cases hold that the Married Woman's act of 1852 operates to deprive the husband of an estate by the curtesy initiate—which was a freehold estate in possession—during their joint lives, but does not defeat the right of curtesy that he has in the event of the birth of issue, he surviving her. Therefore, do not the declarations in the opinions, that under the act in question a husband marrying after July 4th, 1852, can acquire no right or interest in his wife's separate real property during their joint lives mean no *possessory right or interest,* and that that is the interest or estate of which he is deprived, *and that only;* and further, that the right and interest which he has to succeed to a freehold estate in possession for his own life after her death (issue being born alive) inheres in him from the time of the marriage until his death during her lifetime? If so, why does not a married man have a *contingent* estate in remainder in his wife's land during coverture before the birth of issue, just as he has a *vested* estate in remainder after the birth of issue? And if he has such a contingent estate in remainder in the given circumstances, why must not that estate be conserved for his possible succession to it?

I am just as unable to understand why the husband of a woman who has not borne a child has not a contingent estate in remainder in her lands as Vice-Chancellor Stevens was unable to understand why a husband, after issue born alive, had not a vested estate in remainder in his wife's lands. *Doremus* v. *Paterson, 69 N. J. Eq.* (at *p. 193*). The husband's interest in the former situation, to my mind, answers perfectly to the description of a contingent estate in remainder.

Speaking of remainders, it is said, in *Chall. Real Prop. *60,* that a *remainder* is an estate limited to commence after the determination of a particular estate previously limited by the same deed, and that *deed* must be taken to include *any act of the law.*

It is obvious that an estate by the curtesy arises by act and operation of law. And, speaking of contingent estates, Challis says (at *p. *57*) that their distinguishing quality of contingency is conferred upon them by the terms of their limitation, either by a provision that the specified person shall not take unless a contingency shall happen, &c. Now, when Mrs. Tracy married her present husband, by act and operation of law he was clothed with a right, and therefore an interest, to succeed to the enjoyment of an estate in possession in her lands for his life after her death, if he should survive her and there should be issue of the marriage born alive. As is well known, the estate by the curtesy depends upon four essentials—*first,* that the wife be seized of an estate of inheritance to which issue of the marriage may possibly succeed as the heir of the wife; *second,* that the estate be or become, during coverture, an interest in possession; *third,* that seisin in deed (less properly styled actual seisin) be obtained during coverture, and *fourth,* that issue be born alive. *Chall. Real Prop. *276.* The transpiring of these four events constitute the contingency upon which an estate by the curtesy arises—that is, vests in the husband in possession after his wife's death. It is obvious that when a man marries a woman possessed of real estate, there is at least a possibility of his succeeding to the enjoyment of that estate in possession. He is one to whom his wife's lands may come in remainder during his life after her death. As without the birth of issue he has no capacity to take in possession upon his wife's death in his lifetime, the estate is not vested but contingent, because the essential contingency which would entitle him to take the estate, namely, the birth of issue, has not happened. But after the birth of issue his estate becomes vested. It then becomes an inchoate right of curtesy, as we have seen.

Referring again to *Doremus* v. *Paterson,* I desire to call attention to the language of Vice-Chancellor Stevens—*69 N. J. Eq.* (at *p. 195*). He said: "The freehold estate for their joint lives which the husband had at common law, immediately upon the marriage and before the birth of issue, was destroyed *in toto* by the Married Woman's act." In my opinion, that was all that was destroyed, namely, the freehold estate in possession for their

joint lives. The contingent interest that the husband has upon marriage has not been destroyed, for it ripens into an inchoate right of curtesy upon the birth of issue and blooms into a freehold upon the wife's death in her husband's lifetime. Vice-Chancellor Grey, in *Bristol* v. *Skerry, 64 N. J. Eq. 624,* held that a husband, notwithstanding the Married Woman's act, has an equity in his wife's lands which this court will recognize; that he still has power to prevent her from conveying them, and, a child being born, &c., he has curtesy.

I hold that a husband upon marriage, notwithstanding the Married Woman's act, immediately acquires a contingent estate in remainder in his wife's land. That estate could certainly be created by deed or will upon the same contingency. That is, an estate for life in lands could be granted or devised to a married woman for her life with remainder to her husband for his life after her death, provided they have issue born alive. The only difference. is, that in the case of curtesy the estate arises by act and operation of law instead of by deed or will, and, as we have seen, they amount to the same thing.

For want of a proper showing of. facts, Mrs. Tracy can have no relief on the petition before me. The pleading should show the date of her marriage and whether or not she has had issue born alive. It is a common law rule, which has not been changed by statute in this state, that a pleading must be construed against the pleader and that construction adopted which is most unfavorable to that party. *31 Cyc.* 78. See, also, *Stephens & Condit Trans. Co.* v. *Central Railroad Co., 33 N. J. Law 229.* The application of this doctrine to the case before me requires a holding that it cannot be presumed in favor of the wife that she has borne her husband no issue. Chancellor Runyon's decision, in *Castner* v. *Sliker, 43 N. J. Eq. 8,* ignores this doctrine, but he cites no authority to support his proposition. Vice-Chancellor Stevens, in *Doremus* v. *Paterson,* says that Chancellor Runyon was right in his ruling, but I feel compelled to dissent from the learned vice-chancellor's view also. Chief-Justice Gummere's opinion, in *Doremus* v. *Paterson, 69 N. J. Eq. 775,* affirming the decision of Vice-Chancellor Stevens in the same case, rests the decision of the court of errors and appeals on

grounds other than those touching the interests of married men in the real estate of their wives; in fact, that question does not appear to have been included in the appeal. In saying that I dissent from Vice-Chancellor Stevens' view that Chancellor Runyon was right in *Castner* v. *Sliker,* I do not dissent from the learned vice-chancellor's decision sustaining the demurrer in *Doremus* v. *Paterson, supra.* In that case certain husbands joined their wives as complainants in a bill filed in respect to injury to their wives' lands and because of the ownership of those lands by their respective wives. The bill did not show the birth of issue to any of the couples, and the vice-chancellor held that because it did not appear from the bill that either of the husbands had any such interest in the lands as made them, or either of them, proper parties complainant, the demurrer was sustained. That suit presented quite a different proposition than that of a wife seeking to obtain the possession of real property, or money which represents it, in such a way that she may consume it, without making her husband a party to the suit and thus giving him an opportunity to protect his adverse interest. It may well be that when husband and wife file a bill to protect the latter's real estate, and there is no allegation of issue born, that there should be no presumption to that effect. And it appears that he is not a necessary party to such a suit, for, by section 11 of the Married Woman's act (*Comp. Stat. p. 3235*), it is provided, *inter alia,* that a married woman may maintain an action in her own name and without joining her husband, for the recovery of her separate real property and for damage done to it. But, at least, when a married woman files a bill to recover money, the proceeds of the sale of real estate, which is land for the purpose of succession, and shows that she has a husband living, there cannot, in my judgment, be any presumption indulged against the husband that no issue has been born. Blackstone, speaking of matrimony, says that one main inducement to it is usually not only the desire of having children, but also the desire of procreating lawful heirs. *1 Bl. Com. 455.* Blackstone wrote in the days of large families, and, while sterility may now be more widespread than in his time, nevertheless, the vast majority of married couples have children, and, given a case

of matrimony, it is rather doing violence to a natural presumption to hold that there can be no presumption of issue born.

Mrs. Tracy may file an amended petition charging her husband as a respondent on the question of the distribution of the surplus money in the case at bar. She should make averment of the facts which, as above pointed out, are necessary to the proper disposition of the matter before the court.