### LONGEST v. LANGFORD et al.

No. 11500—Opinion Filed July 7, 1925.

Withdrawn, Corrected, and Refiled Jan. 12, 1926, and Rehearing Denied and Dissenting Opinion Jan. 13, 1926.

(Syllabus.)

**Indians — Allotments — Curtesy Right of Surviving Husband.**

The surviving husband of Mary E. Puckett, Choctaw Indian woman who was duly enrolled as such, who had been lawfully married to said husband and of said marriage a child was born, but who died before receiving her allotment, is entitled to curtesy in said lands under the facts stated in the opinion.

Error from District Court, Jefferson County; Cham. Jones, Judge.

Action by W. C. Langford et al. against C. J. Longest to recover interest in land. Judgment for plaintiffs, and defendants brings error. Affirmed.

Ledbetter, Furman & Ledbetter, for plaintiff in error.

Green & Pruet, for defendants in error.

CLARK, J.  W. C. Langford, as plaintiff, commenced this action in the district court of Jefferson county for possession of certain real estate located in said county and for damages for withholding the same, against the defendant, C. J. Longest. Judgment was rendered for plaintiff, from which defendant appeals.

One Mary E. Puckett was a citizen of the Choctaw Nation. She departed this life in the year of 1903, at which time she was the wife of G. N. Puckett. The said Mary E. Puckett, hereinafter referred to as the allottee, and the said G. N. Puckett had been married in due form of law about one year prior to the death of the said Mary E. Puckett. Their residence had been and was near Bokchita, in the southeast portion of the Choctaw Nation. To the said Mary E. and

G. N. Puckett was born one child, who is now living. The said Mary E. Puckett was duly enrolled upon the final rolls of citizens of the Choctaw Nation prepared under and by virtue of the Curtis Act, as well as the subsequent acts of Congress governing the enrollment and allotment of lands of citizens of the Choctaw and Chickasaw Nations. At the time of the death of the said allottee, no selection had been made of the lands she would have been entitled to receive, had she lived but in the year 1904, G. N. Puckett, surviving husband of the said allottee, as administrator of her estate, made a selection in the name of the said Mary E. Puckett, of the lands so situated, as hereinabove indicated, for which certificate of allotment and patent were subsequently issued. The said Mary E. Puckett was the mother of several children by a former marriage, and the defendant Longest was in possession of an undivided part of the premises sued for, by reason of conveyances from certain ones of said children of the said Mary E. Puckett by her former marriage.

The right of recovery of the plaintiff is based upon the fact that he purchased from said G. N. Puckett, the husband, all his interest in said estate. He contends that the interest acquired from the said G. N. Puckett was an estate by curtesy, or an estate in said land for life, and the only question presented for decision in this case is whether or not the said G. N. Puckett inherited in said property an estate by curtesy.

This land was allotted in the name of Mary E Puckett and vested in her heirs by virtue of the Act of Congress approved July 1, 1902, known as the Supplemental Agreement, governing the selection and devolution of land of this character. Section 22 of said act provides:

"If any person whose name appears upon the rolls, prepared as herein provided, shall have died subsequent to the ratification of this agreement, and before receiving his allotment of land, the lands to which such person would have been entitled if living shall be allotted in his name, and shall, together with his proportionate share of other tribal property, descend to his heirs according to the laws of descent and distribution as provided in chapter forty-nine of Mansfield's Digest of the Statutes of Arkansas."

In the case of Shultis v. McDougal, 95 C. C. A. Reports, page 615, the Circuit Court of Appeals had this act of Congress under consideration. After reviewing the history of the land of the Five Civilized Tribes and the allotment acts for the different divisions thereof, the court said:

"In order to provide for all members of the tribe who were born subsequent to the beginning of the enrollment, the date of right to enrollment was twice set forward, the statute last quoted fixing the latest date. By reason of these facts, when the roll was completed, it contained more names than there were members in being. The roll, however, furnished the basis for the division of the tribal estate. Every person whose name was entered on the roll was entitled to an equal proportion of the tribal land and funds; but by reason of the fact that before actual distribution could be made, and even while the enrollment was in progress, some persons whose names were on the roll would die, the statute made provision for the disposition of the share of tribal property which would go to them if living. Such a provision was necessary. Otherwise there would have been a portion of the tribal property undistributed. It was never the intent, however, either of the tribe or of the federal government to grant to parties having a kinsman who had died before the actual making of the allotment additional lands as a bounty. These kinsmen got all their right to additional lands under and through the enrolled member who had died. Whether the ancestor was actually seized of the property or not in his lifetime, was immaterial. It was the intent of the statute that the property should pass by the same right and in the same manner that it would have passed if the person enrolled had survived to receive his allotment. The tribe was not bestowing such land as a bounty, but was simply providing for the right of inheritance. Congress itself has construed this statute. Section 5 of the act (Act April 26, 1906, c: 1876, 34 Stat. 138) provides: 'That all patents or deeds to allottees in any of the Five Civilized Tribes to be hereafter issued, shall issue in the name of the allottee; and if any such allottee shall die before such patent or deed becomes effective, the title to the lands described therein shall inure to and vest in his heirs; and in case any allottee shall die after the restrictions have been removed his property shall descend to his heirs or his lawful assigns, as if the patent or deed had issued to the allottee during his life: and all patents heretofore issued, where the allottee died before the same becomes effective, shall be given like effect.' Here is an express declaration by Congress that the land shall descend to heirs the same as it would have descended if the patent or deed had issued to the allottee during his life. and it is declared that allotments for allottees who have died shall also thus descend. This interpretation by Congress of its own act leaves no room for doubt as to its intent."

In the case of Ned et al. v. Countiss, 84 Okla. 138, 203 Pac. 168, this court, speaking through Mr. Justice Nicholson, in the second syllabus of said opinion says:

"The law of descent in force at the date of the certificate of allotment to a member of the Choctaw Tribe of Indians, is the governing law, and this law relates back to the death of the Indian entitled to take the allotment, and identifies the heirs as of that date, and such law should be applied as if the deceased had received title to his allotment and died seized thereof."

It is contended by the plaintiff in error that the said G. N. Puckett did not take an estate by curtesy in the land in controversy, for the reason that Mary E. Puckett was not actually seized of this particular tract of land at the time of her death. With this contention we cannot agree. Mary E. Puckett owned at the time of her death an undivided interest in all of the unallotted land in the Choctaw and Chickasaw Nations, and for the further reason that in construing this statute according to the authorities above cited, we must construe it as though she had died seized and possessed of this land.

It is next contended that chapter 49 of Mansfield's Digest does not specifically provide for curtesy, and that section 22 of the Act of Congress July 1, 1902, provides that said land shall descend according to chapter 49. Section 2534, chapter 49, Mansfield's Digest, provides:

"In all cases not provided for by this act, the inheritance shall descend according to the course of the common law."

It was the intention of Congress that land allotted under section 22 of the Act of Congress July 1, 1902, supra, should descend and vest in th se persons entitled to receive the same, as if the allottee had died seized of said allotment. And it has been so held by this court. This is not a new question, but has been passed squarely on by this court in the case of Morris et al. v. Sweeney et al., 53 Okla. 163, 155 Pac. 537, by Mr. Justice Hardy, the first syllabus of which reads as follows:

"The surviving husband of a deceased full-blood Mississippi Choctaw Indian woman who was duly enrolled, but who died before receiving patent to her allotment, is entitled to curtesy in said lands, under the facts stated in the opinion."

In the body of the opinion the court says:

"This deed would convey whatever interest said Robert Sweeney at that time had in and to said lands. His wife having died before receiving her patent, and children having been born alive of the marriage, he would be entitled to an estate by curtesy in the allotment of his deceased wife. Johnson et al. v. Simpson, 40 Okla. 413 139 Pac. 129; Armstrong v. Wood (C. C.) 195 Fed. 137; Pierce et al. v. Ellis et al., 51 Okla. 710, 152 Pac. 340.

"In Cook v. Childs, 49 Okla. 321, 152 Pac. 88, it was held:

. " 'The surviving widow of a deceased member of the Choctow Tribe of Indians who died after his enrollment was finally approved, and before selecting his allotment, (where an allotment was afterwards selected in his name by an administrator, and patent issued therefor under the provisions of section 22 of the Act of Congress of July 1, 1902, commonly known as the 'Choctaw-Chickasaw Supplemental Agreement,' is entitled to dower in the lands selected by such administrator.'

"In that case the husband died after his enrollment was finally approved, and before selecting his allotment, and the wife was awarded dower in the lands selected by the administrator.

"By parity of reasoning in the instant case, the enrollment of the deceased, Arrah Ann Sweeney. having been finally approved, her lands would descend in the same manner as they would have descended had patent issued during her lifetime. and her surviving husband, Robert Sweeney, would be entitled to curtesy therein, and his deed, being properly executed and approved, would be effectual to convey his interest. This question was not presented nor considered by the court in Criner v. Farve et al., 44 Okla. 618. 146 Pac. 10."

We, therefore, must conclude, in view of the authorities, supra, that G. N. Puckett, husband of Mary E. Puckett. an enrolled citizen of the Choctaw Nation, deceased, acquired an estate by curtesy in the land involved in this suit, and that his conveyance to the plaintiff, W. C. Langford, conveyed his interest therein, and that the judgment of the district court for possession of the premises sued for in favor of Langford based upon said conveyance is correct. And the same is affirmed.

NICHOLSON, C. J. and HARRISON, MASON, PHELPS, LESTER, HUNT, and RILEY, JJ., concur.

Note.—See under (1) 31 C. J. p. 525, §99.

---

BRANSON, J. (dissenting). W. C. Langford, as plaintiff, instituted this action in the district court of Jefferson county, for the possession of an undivided interest in certain land located in section 14, township 7 south, range 5 west, and section 8, township 7 south, range 3 west, I. M., and for damages for withholding the same against the defendant, C. J. Longest. Judgment was rendered for the plaintiff, from which the defendant appeals.

One Mary E. Puckett was a citizen of the Choctaw Nation. She departed this life in the year 1903, at which time she was the wife of G. N. Puckett. The said Mary E. Puckett, hereinafter referred to as the allottee, and the said G. N. Puckett had been married in due form of law about one year prior to the death of the said Mary E. Puckett. Their residence had been and was near Bokchito, in the southeast portion of the Choctaw Nation. To the said Mary E. and G. N. Puckett was born one child, who is now living. The said Mary E. Puckett was duly enrolled upon the final rolls of citizens of the Choctaw Nation prepared under and by virtue of the Curtis Act, as well as the subsequent acts of Congress governing the enrollment and allotment of lands of citizens of the Choctaw and Chickasaw Nations. At the time of the death of the said allottee, no selection had been made of the lands she would have been entitled to receive, had she lived, but in the year 1904, G. N. Puckett, surviving husband of the said allottee, as administrator of her estate, made a selection in the name of the said Mary E. Puckett, of the lands situated as hereinabove indicated, for which certificate of allotment and patent were subsequently issued. The said Mary E Puckett was the mother of several children by a former marriage, and the defendant Longest was in possession of an undivided part of the premises sued for, by reason of conveyances from certain ones of said children of the said Mary E. Puckett by her former marriage.

The right of recovery of the plaintiff is based upon the fact that he purchased from the said G. N. Puckett, the husband, all his interest in said estate. He contends that the interest acquired from the said G. N. Puckett was an estate by the curtesy, or an estate in said land for life, and the only question presented for decision in this case is whether or not the said G. N. Puckett inherited in said property an estate by the curtesy.

It will be noted that the said Mary E. Puckett was not the owner of the land herein sued for at the time of her death, was not in possession of the same, and had no interest therein, and was not seized thereof at any time during her life, but at the time of the death of the said allottee, one W. F. Bourland, a member of the Chickasaw Tribe of Indians by blood, was occupying said premises, then part of the public domain of the Chickasaw Nation, and was the owner of the improvements located thereon, and that the said Mary E. Puckett had no interest therein of any kind or character during her coverture with the said G. N. Puckett, and that the

only interest that the said Mary E. Puckett had in any of the lands of the said tribes was by reason of her citizenship in the Choctaw Nation.

That portion of the act of Congress approved July 1, 1902, known as the Supplemental Agreement with the Choctaws and Chickasaws, governing the selection and the devolution of land situated as here, is found in section 22, which in the applicable part provides:

"If any person whose name appears upon the rolls prepared as herein provided, shall have died subsequent to the ratification of this agreement, and before receiving his allotment of lands, the lands to which such person would have been entitled, if living, shall be allotted in his name, and shall, together with his proportionate share of other tribal property, descend to his heirs, according to the laws of descent and distribution, as provided in chapter 49, Mansfield's Digest of the Statutes of Arkansas."

Thus it will be seen that lands of the public domain of the Choctaw or Chickasaw Nations to be set aside in the name of the deceased Mary E. Puckett, she having died prior to the selection of the land, should descend to her heirs, as provided in chapter 49 of Mansfield's Digest.

In the case of Shulthis v. McDougal, 170 Fed. 529, the Circuit Court of Appeals for 8th Circuit makes this syllabus, referring to the statute governing the descent of similar lands in the Creek Nation, which statute is practically identical with section 22, supra:

"That the word 'descend,' which was technically inapplicable to the situation described, since the decedent would never be seized of the property, was used to indicate the character of the title or estate which passed to the heirs, it not being intended that they should take the property as an additional bounty from the tribe, but by virtue of their heirship, their title being one of inheritance rather than of purchase, the situation being made the same by such provision as though the title had become vested in the decedent before his death."

The word "descend" is used to indicate the "character of the title," and in no wise to legislate title into a dead person so as to meet the requirements of some particular estate known in law. In other words, the said statute was, in effect, a substitution. Instead of the allottee, those to take who would have been classified as his heirs, under chapter 49, if he had been possessed of such an estate susceptible of descent. were declared to be the owners. Said chapter adopted provided the circumstances, conditions, and elements which should exist before certain relatives could take, instead of the decedent. So as to the husband, who might claim an interest in the land allotted to his deceased wife. The disposition of the lands so allotted after the death of the allottee being as provided in chapter 49, supra, the husband would, of course, take no interest, unless in chapter 49 there is provided the conditions and elements of an estate, etc., the husband could receive in this character of property. There is nothing in said chapter 49 of Mansfield's Digest which in any wise refers to the common-law estate of curtesy as such; nor that vests the estate in heirs subject to curtesy. The only provision of said chapter 49 which could in any wise be construed to the effect that curtesy is anywhere contemplated by said chapter is that provision therein which reads:

"Section 2534. In all cases not provided for by this act, the inheritance shall descend according to the course of the common law."

This is a virtual declaration that said chapter 49 does not provide for descent according to the course of the common law. Congress, in making this chapter the governing provision as to lands so allotted as is found here, confines the devolution to the express provisions of chapter 49, and not to rules of descent found at common law, and which are not embraced within said chapter 49.

In adopting chapter 49, it was the intent of Congress that the rule of descent should be according to the rule incorporated by express enactment therein, and not what was therein expressly declared not to be provided for by said chapter. The estate by the curtesy existed as to Indian lands, not by reason of section 2534, supra, but by reason of the adoption of chapter 20 of Mansfield's Digest, and it's being made applicable to Indian lands by the Act of Congress of June 7, 1897. There was, therefore, not to be found in the provisions of the descent law specially declared to govern allotments made after the death of the allottee, any provision for the vesting of curtesy in the husband.

But if said section 2534 is held to have any effect in providing a rule of disposition of such land as herein in question, it requires that resort be had to "the course of the common law." At common law, "an estate by curtesy may exist in an estate of inheritance, and in no other estate." Tiffany on Real Property, vol. 1, page 491. Seizin of an estate of inheritance during coverture being a necessary element of curtesy, this

element could not be eliminated except by express legislative enactment.

In the case of McDaniel v. Grace et al., 15 Ark. 466, the elements of a common-law estate by the curtesy is thus defined:

"The husband is entitled to curtesy in the wife's real estate, only where there is issue born alive, and a seizin in fact as well as in law, except in the case of waste, uncultivated lands not held adversely; and so the husband would not have curtesy where the land is held by another, adversely, and is the subject of litigation until after the death of the wife."

It is therein further stated:

"By the common law, tenancy by the curtesy is an estate for life, created by the act of the law. When a man marries a woman seized at any time during the coverture of an estate of inheritance in severalty, in coparcenary or in common, and hath issue by her born alive, and it might by possibility inherit the same estate as heir to the wife, and the wife dies in the lifetime of the husband, he holds the land during his life, and it is immaterial whether the issue be living at the time of the seizin or at the death of the wife, or whether it was born before or after the seizin. 4 Kent, Com. 289."

In the case of Hackensack Trust Co. v. Tracey et al. (N. J.) 99 Atl. 846, the common-law estate by the curtesy is defined to have had these elements or essentials:

"First, that the wife be seized of an estate of inheritance to which issue of the marriage may possibly succeed as heir of the wife; (2) that the estate be or become, during coverture, an interest in possession; (3) that seizin in deed less properly styled actual seizin) be obtained during coverture; and (4) that issue be born alive. The transpiring of these four events constitute the contingency upon which an estate by the curtesy arises, that is, vests, in the husband in possession upon his wife's death."

To the same effect is Bogy v. Roberts (Ark.) 2 S. W. 186, Lutrell v. Reynolds (Ark.) 37 S. W. 1051, and Harrod v. Myers, 21 Ark. 600. One of the elements of a common-law estate by the curtesy being that the deceased wife must have been seized of an estate of inheritance, the next consideration necessarily must be whether or not, under the facts in this case, there was any seizure of · an estate of inheritance of the land in litigation.

At the time of the death of Mary E. Puckett, no land had been selected for her, and the uniform holding of this court and of the Supreme Court of the United States has been and is that no right, title, interest, or estate vested in the said decedent. Size-

more v. Brady, 235 U. S. 441; Woodward v. deGraffenried, 238 U. S. 284; Franklin v. Lynch, 233 U. S. 269; Gritts v. Fisher, 224 U. S. 640; Stephens v. Cherokee Nation, 174 U. S. 445; Cherokee Nation v. Hitchcock, 187 U. S. 204; Delaware Indians v. Cherokee Nation, 193 U. S. 127; McKee v. Henry, 201 Fed. 74; Hoyes v. Barringer, 168 Fed. 221; Bledsoe v. Wortman, 35 Okla. 261, 129 Pac. 841; Hooks v. Kennard, 28 Okla. 457, 114 Pac. 744; De Graffenried v. Iowa Land & Trust Co., 20 Okla. 687, 95 Pac. 624; Sanders v. Sanders, 28 Okla. 59, 117 Pac. 338; Barnett v. Way, 29 Okla. 780, 119 Pac. 418.

The plaintiff in this action relies for recovery upon the authority of the case of Morris v. Sweeney, 53 Okla. 163, 155 Pac. 537. This is the only case from this court which in any wise sustains his position. In this case, it is recited that Ann Sweeney was an enrolled Mississippi Choctaw Indian, who died before receiving patent to her allotment. Robert Sweeney was her husband. The body of the opinion recites this deed would convey whatever interest said Robert Sweeney at that time had in and to said land, and says:

"His wife having died before receiving her patent, and children having been born alive of the marriage, he would be entitled to an estate by curtesy, in the allotment of his deceased wife."

In support of this, the cases of Johnson et al. v. Simpson, 40 Okla. 413, 139 Pac. 129, Pierce et al. v. Ellis, 51 Okla. 710, 152 Pac. 340, and Armstrong v. Wood (C. C.) 195 Fed. 137, are cited. Neither of the cases cited in this opinion supports the conclusion reached therein.

In the case of Johnson et al v. Simpson, supra, all the elements necessary to vest an estate by the curtesy, as set out hereinabove, were found existing. That is to say, a legal marriage, issue born capable of inheriting, actual seizin in the land during coverture, and death of the wife. In the opinion in that case, written by Justice Kane, there was under consideration the estate by curtesy by reason of the Act of Congress of May 2, 1890, which extended and put in force in the Indian Territory the common law as adopted by the state of Arkansas (chapter 20, Mansfield's Digest), with a proviso excepting Indians and their estates, and the Act of June 7, 1897, which provided that such laws shall apply to all persons of the Indian Territory, irrespective of race, and by the Curtis Act of June 28, 1898, "which provided that the laws of Indian Tribes should no longer be enforced,

the common law as theretofore conditionally extended over the Indian Territory was made applicable to all persons, irrespective of race, and that the estate by the curtesy attached in favor of the husband to all lands of which the wife became seized during coverture, upon the arising of the conditions upon which that estate is based at common law."

In the case of Pierce v. Ellis, supra, one Nannie Rogers, a Chickasaw Indian by blood, married John Rogers, a white man. Of this marriage, one child was born capable of inheriting, and after receiving her allotment of lands, Nannie Rogers departed this life, leaving surviving her child and her said husband. Upon this state of facts, the court held that he was entitled to an estate by the curtesy. The facts in the case of Armstrong v. Wood, supra, are similar.

It does not appear from the recitation of the facts in the case of Morris v. Sweeney, relied upon by the plaintiff, as to whether selection had been made of the land in question before the death of Ann Sweeney or not, the opinion merely reciting that the wife having died before receiving her patent, the husband would be entitled to an estate by the curtesy in the allotment of his deceased wife. No selection having been made before the death of the wife, the deceased wife had no allotment, and no estate in any allotment ever vested in her, but her interest was that of a mere float or expectancy to which no right of curtesy as existing at common law could in any wise attach. If it can, therefore, be successfully contended that section 2534, supra, quoted from chapter 49 of Mansfield's Digest of the Statutes of Arkansas, be held to draw to said chapter, within the intent and purpose of Congress in adopting the rule in said chapter found, as governing the allotment of lands as herein involved, the rules of the common law, we find one of the necessary and essential elements of an estate by the curtesy was lacking in the land in question, at the time of the death of the said Mary E. Puckett, and the rule of the common law therein referred to would be inapplicable to the condition existing.

In the case of Schultis v. McDougal, supra, the court at great length discussed the fact that the provisions of said chapter 49 are not in toto applicable to the conditions existing in the Five Civilized Tribes and to the descent of the lands of which it was by the act of Congress sought to be applied. The provision of said chapter 49, as to new acquisitions, was held to have no application to lands allotted to citizens of said tribes,

and if the rule of the common law is held by the adoption of said chapter, in so far as it provides for an estate by the curtesy, to have been made a governing rule by said quoted section, certainly Congress did not and could not, by adopting this chapter, alter, modify, or change any of the elements which, under the plain statute adopted, required to exist before an estate by the curtesy would arise. In other words, in adopting this chapter, Congress could not eliminate the element of seizin of an estate of inheritance in the property necessary at common law to create curtesy, when no seizin in fact existed in the person in whose name the lands were set apart after his death.

G. N. Puckett, having no estate by the curtesy in the land allotted in the name of his deceased wife, conveyed no estate therein to the plaintiff, and the judgment of the trial court in his favor was without warrant in law. This cause should be reversed, with direction to enter judgment for the defendant.