## BILLY et al. v. BURNETT.

No. 18815. Opinion Filed March 19, 1929.

Rehearing Denied June 25, 1929.

Cicero J. Murray, and Rittenhouse, Lee, Webster & Rittenhouse, for plaintiffs in error.

William G. Davisson, for defendant in error.

LEACH, C. This action was commenced in the district court of Jefferson county on May 20, 1927, by Charles Billy, Ephram Billy, Sina Johnson, and Raymond Watson, Athersholen Watson, minors, by their guardian, against Clabe Burnett, defendant; the plaintiffs alleging in their petition that they were the owners of an undivided interest in certain described lands located in Jefferson county, such interest being: Charles Billy, a curtesy right; Ephram Billy, an undivided one-third interest; Sina Johnson, Raymond Watson, and Athersholen Watson, each, an undivided one-twenty-fourth interest; that they acquired their title to the land in the following manner, to wit: Deliliah Billy, a full-blood Choctaw Indian, died intestate July 5, 1904, leaving surviving her as her sole heirs, her husband, Charles Billy, and her children, Arabelle Johnson, nee Billy; Ephram Billy, Israel Billy, and Lucinda Billy. In 1904 the United States court at Antlers, I. T., upon petition, appointed an administrator for the estate of said deceased, and upon the advent of statehood such administration proceedings were duly transferred from the United States district court to the county court of Pushmataha county, Okla., where they are now and have been pending since statehood. That the said administrator selected for, and there was duly patented to the said Deliliah Billy the lands involved in this action, and the title thereto became vested in the children of the deceased allottee subject to the curtesy right of the surviving husband. That in 1910 Arabella Johnson, nee Billy, died intestate, leaving as her sole heirs her husband, Silas Watson, and her son, Raymond Watson, who succeeded to her interest in the lands involved; in 1918 the said Silas Watson died intestate, leaving as his sole heirs his then wife, Sina Watson, now Johnson, and Athersholen Watson and Raymond Watson, his children, who succeeded to his interest in the lands. In August 1912, Israel Billy, a child and heir of the allottee, died intestate without issue. That the defendant, Clabe Burnett, is asserting some right, title, or interest in the lands by virtue of certain conveyances described as follows, to wit: Deed from Ephram Billy to U. S. Joines, dated June 12, 1913, approved by the county court of LeFlore county, Okla.; deed from Silas Watson to U. S. Joines, dated August 31, 1914, approved by the county court of McCurtain county, Okla., and by the county court of LeFlore county; deed from Charles Billy to U. S. Joines, approved by the county court of LeFlore county, Okla. That the grantors in said deeds were all duly enrolled full-blood Choctaw Indians, and the lands sought to be conveyed by such deeds were inherited lands, and in order to convey title thereto said conveyances must have been approved by the county court having jurisdiction of the settlement of the estate of the deceased allottee; that at no time did the county court of LeFlore or McCurtain county have any jurisdiction to approve any conveyances of the said allotment, and the grantee named in the deeds acquired no right, title, or interest in said land by reason of such conveyances; that they constitute clouds on the title of the plaintiffs and their interest in said lands, and should be canceled and set aside. That the defendant is in adverse, exclusive possession of the described lands claiming all title thereto and denies the right of the plaintiffs to the possession and title therein. Plaintiffs prayed that their title to the lands be established and quieted, that they be awarded possession of their interest, and that the lands be partitioned.

The defendant filed a demurrer to plaintiffs' petition upon the grounds (1) that the petition does not state facts sufficient to constitute a cause of action in favor of the plaintiffs or to entitle them to the relief sought; (2) that the petition and the documents therein referred to show upon their face that the plaintiffs have no cause of action against defendant and no right to the lands involved; (3) that said petition discloses that if plaintiffs ever had any cause of action, the same is barred by the statute of limitations; (4) under the facts disclosed, Charles Billy never became entitled to a curtesy estate in the lands involved.

The district court sustained the demurrer upon the first and second grounds thereof, whereupon the plaintiffs declined to further plead and elected to stand upon the petition, and the court dismissed the action, and the plaintiffs bring the cause here for review.

Plaintiffs' grounds for reversal may be discussed under their fifth and sixth assignments of error, which are:

"(5) The court erred in holding that said conveyances therein described (in petition), which under the law were void, were validated by the Act of Congress of April 12, 1926.

"(6) That the court erred in holding said act of Congress was constitutional, in so far as such act attempted to validate approval

of conveyances executed by full-blood heirs of inherited lands, when such conveyances were not approved by the court then having jurisdiction of the settlement of the estate of the deceased allottee."

It appears to be conceded by the defendant, or at least there arises no issue upon the allegation and contention of the plaintiffs that the conveyances in question should have been approved originally by the county court of Pushmataha county, in which court probate proceedings upon the estate of the deceased allottee were then and now pending, instead of by the county courts of LeFlore and McCurtain counties. Bailey v. Jones, 96 Okla. 56, 220 Pac. 345; Wolf v. Gills, 96 Okla. 6, 219 Pac. 350; Clement v. Brown, 103 Okla. 108, 229 Pac. 416.

The plaintiffs attacked the conveyances solely upon the ground that they were not approved by the proper county court as designated by the Act of Congress, May 27, 1908. The question presented by this appeal arises upon the validity and effect of the Act of Congress, April 12, 1926, chapter 115, 44 U. S. Stat. at L. 239, entitled "An act to amend section 9 of the Act of May 27, 1908 (35th Stat. at L. p. 312), and for putting in force, in reference to suits involving Indian titles, the statutes of limitation of the state of Oklahoma," etc.; that part of the act, sec. 9, which reads as follows:

"Provided, That all conveyances by full-blood Indian heirs heretofore approved by the county courts shall be deemed and held to conclusively establish the jurisdiction of such courts to approve the same except where more than one such conveyance of the same interest in the same land has been made by the said Indian to different grantees and approved by county courts of different counties prior to the passage of this act, and except that this proviso shall not affect and may not be pleaded in any suit brought before the approval of this act."

It is plaintiffs' contention that the quoted part of the act is void and unconstitutional for the reason that it attempts to deprive them and all other persons in the same class, who were owners of property inherited from a deceased allottee, of the title to their property without due process of law, in violation of the Constitution of the United States, Fifth Amendment; that such act could not operate retroactively to make valid conveyances which were absolutely void and of no effect. In support of such contention plaintiffs quote from various texts and cite cases, among such being the cases of Choate v. Trapp, 224 U. S. 665, 32 S. C. R. 565. and

Chase v. U. S., 222 Fed. 593, 138 C. C. A. 117, wherein it is said in the latter:

"No act of Congress * * * constitutes such due process of law as may impair or destroy a vested right in or title to property."

Cases are cited from this court which hold that approval of conveyances by full-blood heirs of inherited lands by county courts other than those designated in the Act of May 27, 1908, is unauthorized and void.

However, we are unable to agree with the argument and contention of the plaintiffs to the effect that the status of the land or the title thereto is just as if no instrument had ever been executed by the heirs. The conveyances involved in the instant case were signed and acknowledged by the grantors, the plaintiffs herein, or their ancestors; the instrument recites and imports a consideration. The Act of Congress of May, 1908, provided the method, procedure, or manner under which such conveyances should or could be approved by the federal government through its designated agency, which government has the general control and guardianship of such Indian heirs. Notwithstanding the expressions of this and federal courts to the effect that such conveyances as are here involved are invalid and void unless approved by the proper designated federal agency, no time limit appears to have been established within which they might be approved. They have been frequently held valid and binding where the approval thereof was made by the proper federal agency long after the date of the signing and delivery by the grantor, even after his death or after he has filed suit to cancel the instrument and regain the land therein described, and such approval relates back to the date of the signing and makes valid the conveyance which otherwise would be invalid. Anchor Oil Co. v. Gray, 256 U. S. 519, 65 L. Ed. 1070; Hope v. Foley, 57 Okla. 513, 157 Pac. 727; Snell v. Canard, 95 Okla. 145, 218 Pac. 813; Fisher v. Grider, 109 Okla. 23, 234 Pac. 570.

The Act of Congress, April 12, 1926, specifically provides that it shall not affect and may not be pleaded in any suit brought before the approval of the act. The Supreme Court of the United States in the early case of Watson v. Mercer, 8 Pet. 100, 8 L. Ed. 881, sustained the validity of an act of the Legislature of the state of Pennsylvania which cured the defective acknowledgment of a deed after such deed had been held invalid by the Supreme Court of that state. Which case is frequently referred to in later cases, among such being McFadden

v. Evans-Snider-Buel Company, 185 U. S. 505, 46 L. Ed. 1012; Randal v. Kreiger, 23 Wall. 137, 23 L. Ed. 124, which followed the reasoning of the earlier case and sustained the validity of curative, retrospective acts.

Congress, by its Act of April 12, 1926, did not attempt to transfer the title or property rights of the full-blood restricted heirs to another without or against their consent, or at least without any act on their part. In order to convey the land and title of such heirs, the initiative must have been taken by the heirs themselves, and after they have done all in their power by the execution of the deed, then its validity and the transfer of title to the lands described in such deed is contingent upon its approval by the federal government through its designated or approved agency.

The grantors and their heirs, the plaintiffs in the instant case, took no steps, so far as the record discloses, to have the conveyances canceled of record or judicially declared null and void until after the federal government, through Congress, had in effect approved the conveyances by declaring through the act in question that the approval of such conveyances by a county court should be conclusive evidence of the jurisdiction of the approving court.

In the case of Loman v. Paullin, 51 Okla. 294, 152 Pac. 73, the court said:

"Counsel takes the position that, by the original agreement, or treaty, approved by Congress and a vote of the Choctaws and Chickasaws, Loman acquired a vested right forever guaranteeing to him a restriction upon alienation of said lands. * * * We cannot agree with counsel in their contentions in that behalf, * * * that a person may acquire a vested right in that which amounts only to a disability, in this case, simply a restriction upon alienation. Our understanding has always been that the power which has the right to provide a restriction or any inhibition also has the power to remove it."

"No person has a vested right in any particular mode of procedure, and if, before the trial of the cause, a new law of procedure goes into effect, it governs, unless the statute itself provides otherwise." Fry v. Wolfe, 106 Okla. 289, 234 Pac. 191; Campbell v. Holt, 115 U. S. 620, 29 L. Ed. 483; Bachus v. Fort Street Union Depot Company, 169 U. S. 557, 42 L. Ed. 853; Wm. Stephens et al. v. Cherokee Nation, 174 U. S. 445, 43 L. Ed. 1041.

In the case of United States v. Heinszen, 206 U. S. 370, 51 L. Ed. 1098, the court upheld an act validating the levy of tariff duties which were illegal at the time they were collected; the court therein said:

"It is urged that the ratifying statute cannot be given effect without violating the 5th Amendment to the Constitution, since to give efficacy to the act would deprive the claimants of their property without due process of law, or would appropriate the same for public use without just compensation. This rests upon two contentions : It is said that the money paid to discharge the illegally exacted duties after payment, as before, 'justly and equitably belonged' to the claimants, and that the title thereto continued in them as a vested right of property. It is consequently insisted that the right to recover the money could not be taken away without violating the 5th Amendment, as stated. But here, again, the argument disregards the fact that when the duties were illegally exacted in the name of the United States Congress possessed the power to have authorized their imposition in the mode in which they were enforced, and hence, from the very moment of collection, a right in Congress to ratify the transaction, if it saw fit to do so, was engendered. In other words, as a necessary result of the power to ratify, it followed that the right to recover the duties in question was subject to the exercise by Congress of its undoubted power to ratify."

In the case of Gilman Heirs v. United States, 290 Fed. 614, will be found the following statement, with authorities in support thereof:

"It has repeatedly been held that laws validating contracts and conveyances theretofore invalid, to carry out the true intent and purpose of the parties, are within the constitutional authority and power of Congress. Satterlee v. Matthewson, 2 Pet. 380, 7 L. Ed. 458; Watson v. Mercer, 8 Pet. 88; Randall v. Krieger, 23 Wall. 137, 23 L. Ed. 124; McFaddin v. Evans-Snider-Buel Co., 185 U. S. 505, 22 Sup. Ct. 758, 46 L. Ed. 1012; Turpin v. Lemon, 187 U. S. 51, 23 Sup. Ct. 20, 47 L. Ed. 70; United States v. Hinszen & Co., 206 U. S. 370, 27 Sup. Ct. 742, 51 L. Ed. 1098, 11 Ann. Cas. 688."

The majority of the decisions from the state and federal courts hold that where no intervening rights are affected, Congress or the legislative assembly has the power to ratify acts which it might have authorized, and the ratification, when made, is equivalent to an original authority. The rule is stated by Cooley in his work on Constitutional Limitations, p. 457, as follows:

" 'If the thing wanting, or which failed to be done, and which constitutes the defects in the proceeding, is something the necessity for which the Legislature might have dispensed with by prior statute, then it is not beyond the power of the Legislature to dispense with it by subsequent statute. And if the irregularity consists in doing

some act, or in the mode or manner of doing some act, which the Legislature might have made immaterial by prior law, it is equally competent to make the same immaterial by a subsequent law.' The rule as here expressed has been established by the great weight of judicial decisions in America."

In the case of Lykins v. McGrath, 184 U. S. 169, 46 L. Ed. 486, it is said:

"It must, therefore, be considered as settled that the consent of the Secretary of the Interior to a conveyance by one holding under a patent like the present may be given after the execution of the deed, and when given is retroactive in its effect and relates back to the date of the conveyance.

"But the applicability of the doctrine of relation is denied on the ground that the interests of new parties, to wit, the plaintiffs, have sprung into being intermediate the execution of the conveyance and the approval of the Secretary. But one of the purposes of the doctrine of relation is to cut off such interest, and to prevent a just and equitable title from being interrupted by claims which have no foundation in equity. The doctrine of relation may be only a legal fiction, but it is resorted to with the view of accomplishing justice."

The case of Tiger v. Lozier, 124 Okla. 260, 256 Pac. 727, refers to and otherwise quotes from Lykins v. McGrath, supra. In the case of McIntosh v. Dill, 86 Okla. 1, 205 Pac. 917 (260 U. S. 694, 67 L. Ed. 467), this court in passing upon the validity of a sale and involuntary conveyance of title to land owned by a minor Indian, which conveyance was validated by special act of Congress, reviews and quotes from numerous authorities and decisions in support of its holding sustaining the act, and in the syllabus says:

"3. Indian Tribes and individual members thereof are primarily under the control and supervision of the Congress of the United States, and so long as this power subsists the Congress has plenary authority to control and direct the disposition of the property rights of the Indian as a member of a tribe or as an individual, and the doctrine of parens patriae applies to this relation between Congress and the Indians, that of guardian and ward, and is sovereign in its scope. * * *

"5. A proceeding pursued in a guardianship court seeking to convey title to an allotment or a portion thereof of a minor Indian whose lands at the time of such attempted involuntary conveyance are restricted as to alienation, such court at the time not being authorized thereunto by Congress,

is a void proceeding and a deed procured thereunder is a nullity. But it is held that Congress, by a subsequent special act and while said Indian allottee is still under the jurisdiction of Congress and the allotted lands of said Indian and their disposition are still under the control of Congress, may remove such restrictions and approve and validate said transaction and make the deed of force and effect from its date."

In the cases of Scott v. Morris Nat. Bank, 109 Okla. 276, 235 Pac. 912, and Coker v. Watson, 123 Okla. 199, 252 Pac. 829, the court held that certain defects in conveyances of restricted Indian lands was cured by the Act of Congress, August 24, 1922, which purported to validate conveyances of allotted Indian lands theretofore approved by the Secretary of the Interior.

From an examination of the various authorities cited by the respective parties, including those cited in amici curiae brief, and upon due consideration of the arguments advanced, we are of the opinion, and hold, that the Act of Congress of April 12, 1926, that part complained of, which in effect ratified and approved the conveyances in question and adopted the approval thereof by a county court, was not unconstitutional, but valid, was not an act which destroyed existing rights, but rather one effectuating them. We deem such holding to be supported by and in accord with previous holdings of this and other courts in cases involving somewhat similar issues, only a portion of which are referred to herein.

The action of the trial court in sustaining the demurrer to the claim of the plaintiff Charles Billy was correct upon the further ground and for the reason that such claimant had no curtesy rights in the land under the decision of the Supreme Court of the United States in the case of Longest v. Langford, 276 U. S. 69, 72 L. Ed. 471, wherein it overruled the holding of this court in 114 Okla. 50, 242 Pac. 569, and held that the right of curtesy did not exist under a state of facts similar to that pleaded in the instant case.

The judgment of the trial court, sustaining the demurrer to plaintiffs' petition and dismissing the same, is affirmed.

BENNETT, TEEHEE, REID, and FOSTER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See "Indians," 31 C. J. §79, p. 514, n. 96.